**FILED**
**Nov 09, 2018**
**01:17 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| Olivia Clay, | ) | **Docket No. 2018-06-0938** |
| Employee, | ) | |
| v. | ) | |
| Trinity Services Group, | ) | **State File No. 2983 -2016** |
| Employer, | ) | |
| And | ) | |
| Zurich American Ins. Co., | ) | **Judge Kenneth M. Switzer** |
| Carrier. | ) | |

## COMPENSATION HEARING ORDER

The Court held a compensation hearing on November 8, 2018. The only issue was the extent of Ms. Clay's impairment from a shoulder injury she suffered while working for Trinity Services Group. For the reasons below, the Court holds she sustained a permanent partial disability of seven percent to the body as whole.

### History of Claim

Ms. Clay works as a kitchen supervisor for Trinity, the food service provider at Trousdale Turner Correctional Center in Hartsville. On December 28, 2015, a metal door weighing approximately fifty pounds fell on her left arm, shoulder and neck. Trinity accepted the claim, and Ms. Clay received authorized treatment from Dr. S. Matthew Rose for eighteen months following the accident. Ultimately, Dr. Rose assigned a two-percent impairment rating following surgery. Ms. Clay obtained another rating of seven percent from Dr. Robert Landsberg. The issue is their differing ratings.

Trinity relied on the treatment notes and Final Medical Report, Form C-30A, from Dr. Rose. He first saw Ms. Clay in February 2016, diagnosing a cervical strain with possible cervical radiculopathy and a left-shoulder rotator cuff tear with non adhesive capsulitis. Dr. Rose ordered MRIs and placed her on restrictions. He reviewed the MRI results at the next visit and treated her conservatively. By May, when Ms. Clay made little progress, he recommended surgery. Approximately one month later, she underwent

1

arthroscopic rotator cuff repair, subacromial decompression and acromioplasty, and biceps tenotomy with labral debridement. Afterward Ms. Clay reported worsening pain, which persisted for several months. Dr. Rose ordered another MRI. Based on its results, he performed a manipulation of the shoulder under anesthesia to relieve the adhesive capsulitis.

Dr. Rose placed her at maximum medical improvement on February 15, 2017, with permanent restrictions of no lifting above height and no outstretched gripping – "basically nothing heavier than a couple of pounds." He noted she had forward elevation "to about 140 or 150 degrees, abduction still around 130 degrees," but he did not record how many times he measured these two planes of motion or which instrument he used to obtain the measurements. He also did not record measurements for the four other planes of motion contained within the Sixth Edition of the American Medical Association's Guides to the Evaluation of Permanent Impairment.

As for Ms. Clay's impairment, Dr. Rose rated her using the Guides. He used a diagnosis-based method, specifically, Table 15-5 (p. 403), which lists upper extremity impairments. The median rating for a Class 1 rotator cuff full-thickness tear is three percent to the left shoulder. Dr. Rose then consulted Table 15-11 (p. 420), which converted that rating to a two-percent whole-body impairment. Table 15-5 (p. 405) states, "If motion loss is present, this impairment may alternatively be assessed using Section 15.7, Range of Motion Impairment." However, although Dr. Rose measured her forward elevation and abduction, he did not use the alternative range-of-motion method.

Ms. Clay testified that she disagreed with this rating, so she consulted Dr. Landsberg for an independent medical evaluation. She saw him once, on May 23, 2018. Dr. Landsberg reviewed the notes from each of Ms. Clay's fourteen visits to Dr. Rose. He also read and considered records from physical therapy, diagnostic testing and emergency room visits.

On examination, Dr. Landsberg tested Ms. Clay's range of motion three times using a goniometer, noting "definite secure endpoints." Dr. Landsberg likewise used the sixth edition of the Guides and initially used a diagnosis-based method to rate her impairment. He consulted Table 15-5 but noted a default of five-percent upper extremity "with a range of 3-7 percent in Class 1 for a residual loss of function . . . [h]owever, this is for normal motion." Dr. Landsberg then turned to Table 15-7 (p. 406) and placed her within the Grade Modifier 2 due to her ongoing stiffness, limitations and difficulty with grooming. Dr. Landsberg again placed her in Grade Modifier 2 using Table 15-8 (p. 408) for physical examination adjustments. Considering clinical studies, Table 15-9 (p. 410), he then advanced her to Grade Modifier 4. This elevated Ms. Clay to a Grade E, seven-percent upper extremity rating or a four-percent whole person rating. See Table 15-5 (p. 420).

2

Dr. Landsberg performed the alternative assessment method for motion loss using Section 15.7. He noted that when the Guides provide more than one method to rate a particular condition, "the method producing the higher rating must be used." He wrote:

> [U]sing the range of motion section, Table 15-34, on page 475, there is a 3 percent upper extremity impairment rating for decreased flexion, 1 percent for decreased extension, 3 percent for decreased abduction, 1 percent for decreased abduction, 2 percent for decreased internal rotation and 2 percent for decreased external rotation. Therefore, the impairment rating for loss of motion is 12 percent upper extremity. This is higher than the 7 percent from Table 15-5. Therefore, her true impairment rating is a 12 percent upper extremity or 7 percent whole person.

Ms. Clay argued that Dr. Landsberg rebutted the statutory presumption of accuracy to the rating assigned by the treating physician.

Trinity countered that Dr. Rose, as the treating physician who saw Ms. Clay over eighteen months, is more familiar with her progress through treatment. Both doctors' range-of-motion measurements were subjective. Further, the Guides state that, "If motion loss is present, this impairment *may* alternatively be assessed using section 15.7." The permissive "may" indicates that the Guides do not require the alternative method. Moreover, Dr. Landsberg did not comment on why Dr. Rose's methods or conclusion is incorrect. Therefore, according to Trinity, Ms. Clay failed to rebut the presumption.

The parties agreed to Ms. Clay's weekly compensation rate of $313.33.

### Findings of Fact and Conclusions of Law

Ms. Clay must prove all elements of her case by a preponderance of the evidence, including the amount of her permanent partial disability. Tenn. Code Ann. § 50-6-239(c)(6) (2018). To determine this amount, the Court must decide which expert opinion to accept. *Sanker v. Nacarato Trucks, Inc.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 27, at *11-12 (July 6, 2016). The Court may consider the qualifications of the experts, the circumstances of their evaluation, the information available to them, and the evaluation of the importance of that information by other experts. The Court also may accept the opinion of one expert over another if it contains the more probable explanation. *Ledford v. Mid-Georgia Courier*, 2018 TN Wrk. Comp. App. Bd. LEXIS 28, at *7-8 (June 4, 2018). If one expert is an authorized physician, then his impairment rating is afforded a presumption of correctness subject to rebuttal by a preponderance of the evidence. Tenn. Code Ann. § 50-6-204(k)(7).

3

Regarding the experts' qualifications, the parties did not introduce evidence of their expertise or experience. Therefore, the Court assumes the physicians are equally qualified to provide accurate ratings.

As for the circumstances of the evaluations, this factor favors Dr. Rose. As the treating physician, he had more contact with Ms. Clay. "It is reasonable to conclude that the physician having greater contact with an injured worker has an advantage in providing a more in-depth, if not more accurate opinion." *Bass v. Home Depot U.S.A., Inc.,* 2017 TN Wrk. Comp. App. Bd. LEXIS 36, at *14 (May 26, 2017). Trinity argued that this pronouncement from the appellate courts favors Dr. Rose. However, the Appeals Board in *Bass* quoted the above principle in the context of a dispute between experts on medical causation. Further, this principle is not absolute; if it were, the statutory presumption could never be overcome.

Rather, the case turns on the information available to the physicians and the importance of that information in the context of their ratings. Both physicians used a diagnosis-based method, but Dr. Rose did not apply or mention use of the grade modifiers. In contrast, Dr. Landsberg applied the grade modifiers to the diagnosis-based impairment as required by the Guides. Doing so, he arrived at a different diagnosed-based impairment. He explained his use of the functional history, physical examination and clinical study grade modifiers in reaching that conclusion.

Dr. Landsberg went further and used the range-of-motion model as an alternative to the diagnosed-based impairment rating as instructed by the Guides at the end of Table 15-5 (p. 405). He measured each aspect of her decreased range of motion three times as the Guides direct (p. 464) to confirm his measurements. He explained in detail each of the six decreased planes of motion and the ratings for each, and he correctly added them to reach the impairment rating. The Court disagrees with Trinity that these measurements are "subjective." Dr. Landsberg mentioned use of a goniometer, while Dr. Rose did not note whether he used one. Dr. Rose also did not mention if he measured Ms. Clay's range of motion more than once.

Dr. Landsberg correctly observed that the Guides state in Table 2-1, 12 (p. 20) that when more than one method may be used to rate a particular condition, the method producing the higher rating *must* be used. Dr. Landsberg followed the Guides' protocol to assess the extent of Ms. Clay's impairment. Dr. Rose failed to do so and offered no explanation as to why. Thus, the Court finds that the range-of-motion method, which produced the higher, seven-percent rating, was the appropriate method under these facts.

In sum, the Court holds Dr. Landsberg offered the more probable explanation of Ms. Clay's impairment, and his opinion rebuts Dr. Rose's by a preponderance of the evidence. Therefore, she is entitled to permanent partial disability benefits of 31.5 weeks, or $9,869.90. This is calculated by multiplying the seven-percent rating by 450

weeks and multiplying that result by the stipulated weekly compensation rate of $313.33. *See* Tenn. Code Ann. § 50-6-207(3)(A).

**IT IS, THEREFORE, ORDERED** as follows:

1. Trinity shall pay permanent partial disability benefits of $9,869.90. Ms. Clay's attorney is entitled to a twenty-percent fee of the total award under Tennessee Code Annotated section 50-6-226(a)(1) equaling $1,973.98. He may submit a motion for discretionary costs, unless the parties reach an agreement on this issue.

2. Trinity shall provide future medical benefits under Tennessee Code Annotated section 50-6-204(a)(1)(A). Dr. Rose remains the treating physician.

3. Trinity shall pay $150.00 costs to the Court Clerk within five business days under Tennessee Compilation Rules and Regulations 0800-02-21-.07.

4. Trinity shall prepare and submit a Statistical Data Form (SD2) within ten business days of this order becoming final.

5. Absent an appeal, this order shall become final thirty days after issuance.

**ENTERED NOVEMBER 9, 2018.**

**JUDGE KENNETH M. SWITZER**
**Court of Workers' Compensation Claims**

**Appendix**

Evidence
1. Composite medical records
2. IME report

Technical Record
1. Petition for Benefit Determination
2. Post-discovery Dispute Certification Notice
3. Employee's Witness and Exhibit List
4. Pre-Compensation Hearing Statement (Joint)
5. Employee's Pre-Trial Brief
6. Employer's Pre-Trial Brief

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent to these recipients by the following methods of service on November 9, 2018.

| Name | Certified Mail | Fax | Email | Service sent to: |
|---|---|---|---|---|
| Charles Niewold, employer's attorney | | | x | cniewold@bellsouth.net |
| David Weatherman, employer's attorney | | | x | David.weatherman@zurichna.com |

**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov

6



<u>Compensation Hearing Order Right to Appeal</u>:

If you disagree with this Compensation Hearing Order, you may appeal to the Workers' Compensation Appeals Board or the Tennessee Supreme Court. To appeal to the Workers' Compensation Appeals Board, you must:

1. Complete the enclosed form entitled: "Compensation Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within thirty calendar days* of the date the compensation hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. A licensed court reporter must prepare a transcript and file it with the court clerk *within fifteen calendar days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within fifteen calendar days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement of the evidence before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. After the Workers' Compensation Judge approves the record and the court clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties. The appealing party has *fifteen calendar days* after the date of that notice to submit a brief to the Appeals Board. *See the Practices and Procedures of the Workers' Compensation Appeals Board.*

**To appeal your case directly to the Tennessee Supreme Court, the Compensation Hearing Order must be final and you must comply with the Tennessee Rules of Appellate Procedure. If neither party timely files an appeal with the Appeals Board, the trial court's Order will become final by operation of law thirty calendar days after entry.** *See* **Tenn. Code Ann. § 50-6-239(c)(7).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# COMPENSATION HEARING NOTICE OF APPEAL
Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

Docket #: _____

State File #/YR: _____

_____

**Employee**

v.

_____

**Employer**

## Notice

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____to the Workers' Compensation Appeals Board.

[List the date(s) the order(s) was filed in the court clerk's office]

**Judge**_____

## Statement of the Issues

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

## List of Parties

**Appellant (Requesting Party):**_____ At Hearing:☐Employer☐Employee

Address:_____

Party's Phone:_____ Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code:_____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____  SF#: _____  DOI: _____

## Appellee(s)

**Appellee (Opposing Party):**_____At Hearing:☐Employer☐Employee

Appellee's Address: _____

Appellee's Phone: _____Email:_____

Attorney's Name: _____ BPR#: _____

Attorney's Address: _____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____ , certify that I have forwarded a true and exact copy of this
Compensation Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all
parties and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee
Rules of Board of Workers' Compensation Appeals on this the_____day of_____, 20___.

[Signature of appellant or attorney for appellant]      _____

Attention: This form should only be used when filing an appeal to the Workers' Compensation Appeals
Board. If you wish to appeal a case to the Tennessee Supreme Court, please utilize the form provided by
the Court which can be found on their website at the following address:
http://www.tncourts.gov/sites/default/files/docs/notice_of_appeal_-_civil_or_criminal.pdf



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived.  The following facts support my poverty.

1. Full Name:_____     2. Address: _____

3. Telephone Number: _____     4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning | _____ |
| SSI | $ _____ per month | beginning | _____ |
| Retirement | $ _____ per month | beginning | _____ |
| Disability | $ _____ per month | beginning | _____ |
| Unemployment | $ _____ per month | beginning | _____ |
| Worker's Comp. | $ _____ per month | beginning | _____ |
| Other | $ _____ per month | beginning | _____ |

LB-1108 (REV 11/15)                                                                 RDA 11082

9. My expenses are:

Rent/House Payment $ _____ per month   Medical/Dental  $ _____ per month

Groceries        $ _____ per month   Telephone       $ _____ per month

Electricity      $ _____ per month   School Supplies $ _____ per month

Water            $ _____ per month   Clothing        $ _____ per month

Gas              $ _____ per month   Child Care      $ _____ per month

Transportation   $ _____ per month   Child Support   $ _____ per month

Car              $ _____ per month

Other            $ _____ per month (describe: _____ )

10. Assets:

Automobile              $ _____       (FMV) _____

Checking/Savings Acct. $ _____

House                   $ _____       (FMV) _____

Other                   $ _____       Describe: _____

11. My debts are:

Amount Owed                     To Whom

_____            _____

_____            _____

_____            _____

_____            _____

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____
NOTARY PUBLIC

My Commission Expires:_____